SMOOKLER v WHEATFIELD TOWNSHIP

Docket No. 54936. Argued November 5, 1974 (Calendar No. 11).—
    Decided August 19, 1975.

Plaintiffs, Bernard H. Smookler and others, purchased property
    in Wheatfield Township and two years later requested a zoning
    change from rural agricultural to mobile-home park, with a
    strip 300 feet wide to be zoned commercial. The zoning ordi-
    nance permits operation of mobile-home parks within the town-
    ship, but no district has been specifically zoned for that pur-
    pose, and there are no mobile-home parks in the township. All
    applications received for such zoning have been rejected. The
    zoning and planning commission recommended denial of plain-
    tiffs' petition, and the township board followed this recommen-
    dation. Plaintiffs brought an action against the township and
    its supervisor challenging the validity of the township zoning
    ordinance as applied to plaintiffs' land. The Ingham Circuit
    Court, Jack W. Warren, J., rendered a judgment of no cause of
    action. The Court of Appeals, Quinn, P. J., and Bronson and
    Van Valkenburg, JJ., reversed (Docket No. 14669). Defendants
    appeal. *Held:* The Court of Appeals is affirmed.

    Levin, J., with whom T. G. Kavanagh, C. J., and J. W. Fitzger-
    ald, J., concurred, voted to affirm the Court of Appeals for the
    reasons given in *Sabo v Monroe Twp, ante,* 394 Mich 531; 232
    NW2d 584 (1975), namely:

    2. In seeking a change in the zoned use of their property,
    plaintiffs sought an administrative, not a legislative, determina-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 7] 54 Am Jur 2d, Mobile Homes, Trailer Parks and Tourist
    Camps §§ 5–16.
[2, 5, 8] 58 Am Jur, Zoning §§ 21, 22.
[6] 58 Am Jur, Zoning § 34.
[9] 58 Am Jur 2d, Zoning § 14 *et seq.*

3. The record establishes that the proposed use is reasonable, and it should be allowed.

Williams, J., wrote to affirm the Court of Appeals on the ground that the township zoning ordinance which provides for a mobile-home park classification without attaching it to any specific land is void as exclusionary. Therefore, the landowners are not inhibited from establishing a mobile-home park on their property subject to lawful and proper conditions, provided that such use may not constitute a nuisance.

M. S. Coleman, J., dissented. She concurred with Levin, J., in holding that upon proof that a community has excluded a legitimate use, it does not necessarily become obliged to grant a request for rezoning to permit that use. She did not agree that any request for rezoning which is reasonable must be allowed regardless of zoning ordinances, and would reverse the Court of Appeals.

46 Mich App 162; 207 NW2d 404 (1973) affirmed.

OPINION OF THE COURT

1. ZONING—ORDINANCES—EXCLUDED USES—REZONING—MOBILE-HOME PARKS.

On proof that a community has excluded a legitimate use, such as mobile-home parks, it does not necessarily become obliged to grant a request for rezoning to permit that use, because the land sought to be rezoned may not be suitable for development for the excluded use.

2. ZONING—ORDINANCES—AMENDMENT—REASONABLENESS.

Even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances.

3. ZONING—ORDINANCES—AMENDMENT—MOBILE-HOME PARKS.

A requested zoning change from rural agricultural to mobile-home parks, with a strip 300 feet to be zoned commercial, should be allowed where the record establishes that the proposed use is reasonable.

Separate Opinion

Williams, J.

4. Zoning—Ordinances—Validity—Mobile-Home Parks—Exclusion.

A township zoning ordinance which provides for a mobile-home park classification but places no land within that classification is void as exclusionary.

5. Zoning—Ordinances—Reasonableness—Invalid Ordinances.

It is not necessary to examine the reasonableness of a zoning ordinance as applied to plaintiffs' land when the ordinance is invalid on its face.

6. Zoning—Ordinances—Validity—Exclusion.

A zoning ordinance is invalid if it totally excludes an otherwise permissible use.

7. Zoning—Ordinances—Validity—Mobile-Home Parks—Exclusion.

A zoning ordinance which purports to permit mobile-home parks is in fact exclusionary where there is no land to which the zoning for mobile-home parks applies so that they are effectively excluded.

Separate Opinion

M. S. Coleman, J.

See Headnote 1.

8. Zoning—Ordinances—Amendment—Reasonableness.

The holding that any request for rezoning which is "reasonable" must be allowed regardless of zoning ordinances affords neither a workable standard nor any furtherance of the legislative objectives in zoning enactments.

9. Zoning—Supreme Court—Procedures—Standards—Ordinances.

The Supreme Court's role in a zoning case is to ascertain that correct procedures are followed and that appropriate standards are employed; the Court does not sit as a superzoning board nor to impose its social policies upon local communities and it should not be so disrespectful of properly enacted local ordinances that it undermines community attempts to establish commonality of health, safety, economic, ecological, educational and esthetic interests.

*Anderson, Green & McKay, P. C.,* and *Clan Crawford, Jr.,* for plaintiffs.

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay),* for defendants.

LEVIN, J. We affirm the Court of Appeals for the reasons stated in our opinion in *Sabo v Monroe Twp, ante,* 394 Mich 531; 232 NW2d 584 (1975).

T. G. KAVANAGH, C. J., and J. W. FITZGERALD, J., concurred with LEVIN, J.

WILLIAMS, J. This zoning appeal invites this Court to once again confront a facet of exclusionary zoning, this time the creation of a zoning classification without attaching it to any specific land. Such a zoning ordinance is, of course, invalid on its face, and this causes us to invalidate the zoning ordinance of the defendant township as exclusionary.[1]

## I —FACTS

Plaintiffs purchased the subject property at the intersection of Jolly and Meridian Roads in Wheatfield Township in 1968. Two years later, they requested a zoning change from rural agricultural to mobile-home park, with a strip 300 feet deep to be zoned commercial. Their property consists of 123 acres in Wheatfield Township, 90 acres of which are used presently for agriculture, and 1.5 acres rented to a tenant for residential use. The proposed site plan for this Wheatfield Acres Mobile-Home Park included 535 units, with a density of five units per acre.

---

[1] Defendant admitted at oral argument that the township has no master plan. However, we do not base our decision on this factor, analyzed in our opinion in *Sabo v Monroe Twp, ante,* 394 Mich 531; 232 NW2d 584 (1975).

As of the 1970 census, population of Wheatfield Township was 1,117, with 325 housing units. Testimony at trial was that only about 5% of the township was developed. The township is approximately 36 square miles, or 18,297 acres, with three areas designated as residential. All are in the northern half of the township, one directly south of plaintiffs' property, one in the central part of the township, and the other closer to the easterly edge.

The property is located in the northwest corner of Wheatfield Township, about 1 mile north of I-96, two miles south of Grand River Avenue and about three or four miles diagonally southeast of a new shopping center. Adjacent to it on the north is a 43-acre parcel of land used for agriculture. From I-96 north to Grand River, the land is agricultural. South of the property is a residential development of 16 half-acre lots, of which only 9 are built upon. Those homes range between $35,000 and $40,000 in value. The owner of that subdivision owns 76 acres adjacent to it, but has not yet developed it. The remainder of that area is agricultural.

On the west, the property abuts Meridian Road. Another subdivision, this one in Meridian Township, is located across Meridian Road, just a little north of the property. Lots in that subdivision are approximately two acres large, and the homes are worth about $50,000. A third subdivision is located further west in Meridian Township along Jolly Road, with houses also in the upper-income category. There are no other developments in the vicinity of the parcel.

Wheatfield Township itself has thus far limited its commercial development to one gas station along I-96. It does not have its own police or fire department, relying on the Ingham County Sher-

iff's Department and the State Police for police protection. The City of Williamston and Wheatfield Township participate together in providing fire services, with the volunteer fire department located five or six miles away from the subject property in Williamston. Residents of the proposed mobile-home park would send their children to school in Williamston.

There are no mobile-home parks in the township, and nothing else which can be characterized as low-cost housing. There has been discussion of possibly rezoning one area for high-density use, which would include mobile-home parks, but no action has been taken on this.

The township does not have a master plan, although work apparently began on one after institution of the instant suit. The zoning ordinance was amended to permit operation of mobile-home parks within the township, but no district has been specifically zoned for that purpose. Instead, applications for zoning land for use as a mobile-home park are to be considered as they are received by the township board. All applications received for such zoning, including plaintiffs', have been rejected.

The Zoning and Planning Commission recommended denial of plaintiffs' application, and the township board followed this recommendation for the following reasons:

"(a) the area would be better suited for residential development,
"(b) added burden of police and fire protection,
"(c) added burden to schools,
"(d) no benefit to surrounding community."

At trial in circuit court, no testimony was offered that the land is worthless as zoned, but

plaintiffs maintain the property would be more valuable as a mobile-home park and that the lack of growth of the subdivision to the south indicates that the area in question is not suitable for single-family residential development.

The parties stipulated that no traffic problem would be created by the proposed development, as the Ingham County Board of County Road Commissioners anticipated a traffic increase from 800 to between 1,500 and 1,800 cars per day, but that Jolly and Meridian Roads were each capable of handling 4,000 to 5,000 cars per day. No objection was made based on sanitary or sewage arrangements as any system had to be approved by the Michigan Department of Public Health and the Ingham County Road Commission.

The trial court found there was "not sufficient evidence to support plaintiffs' contention that the township had a preconceived scheme to eliminate or prohibit mobile home parks". Additionally, the court found that plaintiffs proposed to "(a) double the population of the Township, (b) more than double the number of household units in the Township, (c) provide two parking places per mobile home unit,[1] [sic] and do it all on approximately 100 acres of land". These factors, combined with the township's lack of police force and fire department, led the court to hold that it "cannot say that the action of the Township did not bear a real and substantial relationship to public health, safety, or the general welfare".

The Court of Appeals reversed in a per curiam opinion, 46 Mich App 162; 207 NW2d 464 (1973). Applying *Bristow v Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971) and *Green v Lima Twp,* 40 Mich App 655; 199 NW2d 243 (1972), they found that the issue on appeal was whether defendant

township had shown that "the needs of public health, safety, convenience, morals or general welfare of the local community far outweigh those of the public at large". 46 Mich App 162, 163. The Court of Appeals held that the trial court's finding of facts did not meet this burden of proof, but rather related to "an increase in the burdens, economic and otherwise, on the township for future services. This type of economic justification for exclusionary zoning was rejected in *Green, supra.*" 46 Mich App 162, 164.

## II —IS A TOWNSHIP ZONING ORDINANCE WHICH PROVIDES FOR A MOBILE-HOME-PARK CLASSIFICATION BUT PLACES NO LAND WITHIN THAT CLASSIFICATION VOID AS EXCLUSIONARY?

### A. The Kropf Principle

In *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), we stated that although, "the ordinance comes to us clothed with every presumption of validity"[2] "that * * * [a] reasonable governmental interest [is] being advanced by the present zoning classification"[3], "an ordinance which *totally* excludes from a municipality a use recognized by the constitution and other laws of this state as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use". 391 Mich 139, 156. Therefore, when confronted with a regulation invalid on its face, it is not necessary for this Court to examine the reasonableness of the ordinance as applied to plaintiffs' land.

*Kropf* also disposed of the notion of a favored or

[2] 391 Mich 139, 162 quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

[3] 391 Mich 139, 158.

preferred use as it affected the shifting of the burden of proof. We found this "concept and the attendant shifting of the burden of proof as to the constitutionality of an ordinance upon the municipality, rests upon no statutory or case law foundation in this state". 391 Mich 139, 154. Therefore, insofar as the Court of Appeals in the instant case applied this test, their decision was incorrect.

The zoning ordinance is, however, invalid because it fails to pass the test outlawing total exclusion of an otherwise permissible use.

### B. Kropf Exclusionary Rule Applied to Instant Land

Plaintiffs have properly borne the burden of proof in demonstrating that the Wheatfield Township Zoning Ordinance Amendment No. 2,[4] purporting to permit mobile-home parks in the township is, in fact, exclusionary on its face.

Critical is the fact that there is no reference to any actual territory to which this zoning applies. The net result is that there is no land in the township zoned for mobile-home parks and consequently they are excluded.

### C. Application of Other Existing Precedent

The fact situation presented by the instant case does not vary substantially from those this Court examined in the past. Therefore, we find no reason to disturb solid past precedent, and find the Wheatfield Township zoning ordinance invalid as it effectively excludes mobile-home parks from the area.

Similar ordinances were expressly disapproved

---

4 See Appendix A for relevant text.

by this Court in cases including *Gust v Canton Twp,* 337 Mich 137; 59 NW2d 122 (1953); 342 Mich 436; 70 NW2d 772 (1955); *Dequindre Development Co v Charter Twp of Warren,* 359 Mich 634; 103 NW2d 600 (1960); *Smith ·v Plymouth Twp Building Inspector,* 346 Mich 57; 77 NW2d 332 (1956); and *Knibbe v City of Warren,* 363 Mich 283; 109 NW2d 766 (1961).

In all these cases, the townships were as relatively undeveloped as Wheatfield Township. Reasons proffered for the denial of rezoning or building requests included the lack of school, police, water, and sewage facilities. See, *e.g.,* 337 Mich 137, 139. Exclusionary zoning devices included prohibition of trailer parks except by special permission as well as that employed in the instant case. Most directly on point are *Dequindre* and *Knibbe.*

When we invalidated the Warren township ordinance in *Dequindre,* there was one mobile-home park "bursting at the occupational seams", 359 Mich 634, 636, already in the jurisdiction. However, the chancellor's findings, approved by this Court, were that:

"[T]he city of Warren does not intend to permit trailer parks now or in the future. It is operating in the same way now that it operated under the ordinance prior to its amendment, which originally, in effect, prohibited trailer parks by making no provision therefor, and which condition induced the amendment to the ordinance in providing an R-4 classification, which defendant now ignores by nonobservance of its intent * * * even though such ordinance has permitted R-4 zoning classification since September, 1955, a period of nearly 3 years, there is no instance in which either the township board or the city council has approved a rezoning to R-4." 359 Mich 634, 638–639.

Thus, the Court disapproved "the outright prohibition of trailer coach parks by the selective administration of a local ordinance". 359 Mich 634, 640.

The same legal principle[5] was enunciated in *Knibbe*, where Warren refused permits authorizing water, sewer and electrical services to permit extension of plaintiffs' mobile-home park (apparently the one "bursting" at the seams in *Dequindre),* as the "defendant has in effect, again prohibited trailer parks by, on the one hand, making them lawful and on the other by failing to give substance to their intent by not zoning any property within the city limits to an R-4 district. * * * [T]he refusal of the defendant to rezone any parcel to R-4, regardless of location and suitability * * * is arbitrary and capricious * * * ." 363 Mich 283, 285.

There is no good reason to reject this established precedent, nor does defendant offer any persuasive means of distinguishing these holdings. That the proposed mobile-home park will dramatically increase population of the township is not a sufficient reason. In a community as undeveloped as Wheatfield Township, any kind of development would increase population substantially. Insofar as affecting municipal services, the Court of Appeals properly noted in *Pederson v Harrison Twp,* 21 Mich App 535; 175 NW2d 817 (1970):

"The snow removal, law enforcement, fire protection and sewer problems, averred to by the defendant, are anticipatory; and there is no proof that these problems would prove insuperable." 21 Mich App 535, 543.

In *Green v Lima Twp,* 40 Mich App 655; 199 NW2d 243 (1972), the Court of Appeals quoted

[5] *See also Anderson v Highland Twp,* 21 Mich App 64; 174 NW2d 909 (1969).

with approval the holding of the Pennsylvania Supreme Court in *National Land & Investment Co v Easttown Twp Board of Adjustment,* 419 Pa 504, 532; 215 A2d 597, 612 (1965), that, "A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities cannot be held valid". 40 Mich App 655, 659–660.

That older inhabitants of an area are afraid of being outvoted by newcomers is, of course, a political problem, and one not properly handled by the jurisprudence of the state.

We hold, therefore, that the Amendment 2 to the Wheatfield Township zoning ordinance is invalid as exclusionary.

## III —CONCLUSION

The township zoning ordinance is invalid because it unreasonably excludes a legitimate land use. Consequently, as to that use the ordinance is null and void. The landowners therefore are not inhibited from establishing a mobile-home park on their property subject to lawful and proper conditions, provided that such use may not constitute a nuisance.

As to others who wish to establish mobile-home parks on their property, this opinion shall not be considered sanction for other property owners to disregard the invalid zoning ordinance, provided that Wheatfield Township forthwith undertakes good faith efforts to provide a valid zoning amendment permitting mobile-home parks in the township, and to establish a master plan. If reasonable good faith efforts are not undertaken within 90 days of the entry of the order in this case and if

reasonable continued progress is not made, then any property owner so desiring may begin proper suit and stand in the same stead as plaintiffs in this suit.

The trial court is reversed. The Court of Appeals is affirmed, but for different reasons. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs to plaintiffs.

## APPENDIX A

### ARTICLE II

### District

Section 2.1—District

A special district is hereby established to be known as Mobile Home Park district "M. H. P."

Section 2.2

Mobile home parks shall be located only in areas previously zoned mobile home park district. "M. H. P."

Section 2.3

Mobile home park districts shall be those meeting the qualifications of this Ordinance.

Section 2.4—Special Assessments for Fire and Police Protection

The Township board shall have the authority as vested in it by State Law to establish special assessment districts in mobile home parks for purpose of Police and Fire protection.

### ARTICLE III

### APPLICATION AND LICENSE

Section 3.1—Application

a. Application for zoning land for use as a mobile home park shall be made on a form pro-

vided by the Township of Wheatfield and shall contain such information, maps, etc., as shall be required by the Wheatfield Township Board.

b. Applicant shall submit proof of preliminary approval received from Michigan State Department of Health in regards to requirements set forth for Mobile Home Parks. Any subsequent rezoning will thus be on a tentative basis until final approval from Michigan State Department of Health.

Section 3.2—Fee and Bond

a. A fee shall be submitted with the application in an amount of one hundred dollars ($100.00) as per Article III of the Wheatfield Township Zoning Ordinance.

b. A performance bond shall be submitted with the application for a permit in an amount not less than 25% nor more than 90% of the architecturally estimated cost of developing the park.

Section 3.3—License

After acquiring approval as provided elsewhere in this Ordinance, and also acquiring the necessary approval and compliance with State Laws, and County Board of Health rules regulating "M. H. P.", the Clerk of the Wheatfield Township Board shall, after the approval of the Wheatfield Township Board, issue a license to operate a mobile home park, subject to the following provisions:

a. The payment of a minimum $20.00 fee, plus $1.00 for each trailer site each year as determined by the Wheatfield Township Board.

M. S. COLEMAN, J. *(to reverse).* I agree with Justice LEVIN's two opening paragraphs and with part II of his opinion* as they apply to these cases and to *Nickola.*[1] Had he stopped there, he probably

---

* In *Sabo v Monroe Twp, ante,* p 531.—REPORTER.

[1] I have written separately in *Nickola.*

would have sought to reverse the Court of Appeals in each instance and I would have signed his opinion.

Part I, however, leads him in each case to affirmance of the Court of Appeals but for a different reason—one with which I am not in accord.

He would hold that any request for rezoning which is "reasonable" must be allowed regardless of zoning ordinances. That conclusion affords neither a workable standard—if it can be called a "standard"—nor any furtherance of the legislative objectives in zoning enactments.

The Legislature, acting properly within its competence, has in this case placed the zoning authority in the township.

The Court's role is to ascertain that correct procedures are followed and that appropriate standards are employed. We do not sit as a super zoning board—or so we say. Neither do we sit to impose our social policies upon local communities. We should not be so presumptuous as to establish common community denominators by judicial fiat. Neither should we be so disrespectful of properly enacted local ordinances that we undermine community attempts to establish commonality of health, safety, economic, ecological, educational and esthetic interests.

## Conclusion

For the reasons set forth in Justice Levin's opinion, excepting part I, I come to the opposite conclusion.

I would reverse the Court of Appeals in each of these cases.

Swainson and Lindemer, JJ., took no part in the decision of this case.