*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD A. JOSTOCK and SUSAN J. JOSTOCK,

        Plaintiffs-Appellees,

v

MAYFIELD TOWNSHIP and MAYFIELD
TOWNSHIP BOARD OF TRUSTEES,

        Defendants,

and

A2B PROPERTIES, LLC,

        Defendant-Appellant.

UNPUBLISHED
May 4, 2023
APPROVED FOR
PUBLICATION
June 1, 2023
9:10 a.m.

No. 362635
Lapeer Circuit Court
LC No. 21-054778-AA

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

Defendant-appellant A2B Properties, LLC, appeals as of right the order of the circuit court denying defendants' motions for summary disposition, and granting declaratory judgment in favor of plaintiffs. The trial court determined that a conditional rezoning of defendant-appellant's property from residential to commercial use to expand its nonconforming use as a drag racing facility was invalid because the amendment served no purpose and advanced no reasonable governmental interest. We affirm.

## I. FACTS

Plaintiffs filed a complaint challenging the decision of defendant Mayfield Township Board of Trustees (the Board) to rezone the property at issue from R-1, single-family residential,

to C-2, local commercial district. The complaint asserts that the property had been used as a drag way since 1968 under a nonconforming use permit. The complaint states that defendant-appellant purchased the dragway on May 9, 2018, and attempted to expand its use, which defendant Mayfield Township (the Township) considered an unlawful enlargement of the permitted nonconforming use. In 2019, the court "enjoined A2B Properties from operating the dragway except for limited hours, generally two days a week on the basis that the dragway is not a permitted land use under the zoning ordinance except to the extent the dragway is maintained as a lawful nonconforming use." Specifically, the dragway could operate on Wednesdays, Sundays, and certain holidays.

Not to be deterred, on April 20, 2021, defendant-appellant filed a petition to have the property rezoned from R-1 residential to C-2 commercial. On May 12, 2021, defendant-appellant submitted a conditional zoning agreement that permitted use of the dragway daily for track rental and vehicle testing in addition to organized racing on Fridays, Saturdays, and Sundays. The Township retained a planning expert to study the proposal; that expert recommended denying the straight rezoning request because the township might lose control over subsequent uses of the property but accepting the conditional agreement because it allowed "the dragway to continue, but under restrictions meant to limit its negative impact."[1] The Township Planning Commission held a meeting to consider comments by citizens regarding defendant-appellant's proposals, and then voted 3 to 2 to approve the conditional rezoning agreement

Plaintiffs' complaint alleged that the Board's decision was contrary to law and asked the trial court to (1) vacate the decision, (2) order defendant-appellant to cease its expanded non-conforming use, and (3) declare the current use a nuisance. Defendants moved for summary disposition under MCR 2.116(C)(10). After oral argument, the trial court granted plaintiffs' request for declaratory judgment. See MCR 2.116(I)(2).[2] The trial court stated that conditional zoning was permitted by statute, but the approved commercial use did not include drag racing; additionally, if defendant-appellant did not continue using the property for its permitted nonconforming use, it would revert to residential or agricultural zoning.[3]

This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion brought under MCR 2.116(C)(10), the court considers "the affidavits, pleadings, depositions,

---

[1] It is unclear how permitting daily use of the dragway and three days of organized racing constitute "restrictions meant to limit [the dragway's] negative impact."

[2] "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

[3] The trial court noted that, "[i]n a separate action, case number 19-052691-AA, which remains pending before this court, the plaintiffs sued to abate an alleged nuisance created by operation of the drag way."

admissions, and other documentary evidence submitted by the parties in the light most favorable" to the nonmoving party. *Rose v Nat'l Auction Group, Inc,* 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* This Court also reviews de novo issues of law. *Connell v Lima Twp*, 336 Mich App 263, 281; 970 NW2d 354 (2021).

## III.  ANALYSIS

In 2006, the Legislature consolidated three separate zoning enabling acts into the Michigan Zoning Enabling Act (the MZEA), MCL 125.3101 *et seq*. *Whitman v Galien Twp*, 288 Mich App 672, 679; 808 NW2d 9 (2010). The MZEA "grants local units of government authority to regulate land development and use through zoning." *Connell*, 336 Mich App at 282. The MZEA specifically provides that " '[a] local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens . . . .' " *Sandstone Creek Solar, LLC v Benton Twp*, 335 Mich App 683, 697; 967 NW2d 890 (2021), quoting MCL 125.3201(1).

The enactment of a zoning ordinance by a township board is a legislative act, as is "the rezoning of a single parcel of land from one district to another" by amendment. *Connell*, 336 Mich App at 283. Courts assume a "deferential role in reviewing claims" that a validly enacted zoning ordinance is unreasonable or arbitrary, making judicial intervention rare, because the local authority is more familiar with the community and land. *Essexville v Carrollton Concrete Mix, Inc*, 259 Mich App 257, 274; 673 NW2d 815 (2003).[4]

### A.  VALID CONDITIONAL ZONING AGREEMENT

Defendant-appellant argues that the trial court erred by overturning a valid and legal rezoning agreement. The Legislature has empowered "municipalities to zone or take other action by agreement even though the agreement will bind those municipalities in the future and constrain their legislative discretion." *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs/State Boundary Comm*, 500 Mich 362, 382-383; 902 NW2d 293 (2017). The MZEA specifically allows for the conditional zoning that occurred in this case: "An owner of land may voluntarily offer in writing, and the local unit of government may approve, certain use and development of the land as a condition to a rezoning of the land or an amendment to a zoning map." MCL 125.3405(1). "[T]he keystone of a conditional rezoning is that the conditions are voluntarily offered by the property owner in writing, and the local unit of government cannot require the landowner to offer conditions as a requirement for rezoning." *Connell*, 336 Mich App at 268.

---

[4] The MZEA provides that a local government " 'may provide . . . for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or amended . . .' " *Whitman*, 288 Mich App at 679, quoting MCL 125.3202(1). In this case, the process that produced the rezoning agreement is not at issue.

Defendant-appellant argues that all conditions for a valid conditional zoning agreement were satisfied. There is no dispute that it was proper for the Township and defendant-appellant to form an agreement for conditional zoning.[5] The trial court agreed with defendants that "the township engaged in conditional zoning as permitted by statute, which allows the township to rezone property subject to the land owner complying with specified conditions." Plaintiffs do not contest that defendant-appellant and the Township properly complied with the MZEA to form an agreement.

## B. SPOT ZONING

Plaintiffs argue that the zoning agreement constituted impermissible "spot zoning." A principle of zoning is that "like uses should be grouped and incompatible uses kept separate." *Robinson Twp v Knoll*, 410 Mich 293, 312; 302 NW2d 146 (1981). This Court has referred to a zoning amendment that creates "an isolated commercial zone within an otherwise validly determined residential zone" as "spot zoning." *Essexville*, 259 Mich App at 272. In *Anderson v Highland Twp*, 21 Mich App 64, 75; 174 NW2d 909 (1969), this Court reiterated that the purpose of zoning was to ensure "uniformity within districts having in fact the same general characteristics," without areas "for peculiar uses." This Court explained the difficulty with "spot zoning" as follows:

> Although not denounced by any hard and fast rule, zoning in a haphazard manner is not favored and, on the contrary, zoning should proceed in accordance with a definite and reasonable policy. Thus, a zoning ordinance or an amendment of a zoning ordinance to permit piecemeal or haphazard zoning is void, and so-called "spot zoning," where it is without a reasonable basis, is invalid. [*Id*. (quotation marks and citation omitted).]

In this case, the Board's approval of the conditional rezoning was not "spot zoning." The conditional rezoning plan did not create or permit a use that was inconsistent with the surrounding area, because the nonconforming use of the property as a drag racing facility had existed for decades.[6] We note that in its opinion, the trial court did not reference "spot zoning," or use inconsistent with the surrounding parcels.

## C. ZONING ORDINANCE

In granting declaratory judgment in favor of plaintiffs, the trial court reasoned as follows:

---

[5] Township regulation § 2100 provides that the Board may "amend, supplement, or change the regulations or the district boundaries" upon the request of a petitioner and a recommendation from the Township Planning Commission.

[6] Defendant-appellant's petition for rezoning states that the subject parcel was zoned for residential use in the community master plan, and that the surrounding parcels were currently zoned for residential use.

-4-

In exchange for the township rezoning the dragway property to category "C-2," [defendant-appellant] promised to only use the land to operate a dragway in a specified manner, which would exceed the scope of activities permitted as a non-conforming use. Because operation of a dragway is not a permitted use in a C-2 zoning district, the defendants have bound themselves to perform conditions that they cannot lawfully perform. This puts the property owner in a double bind. It can either meet the conditions for rezoning, and so be in violation of the ordinance governing land use in a C-2 district, or it can fail to meet the conditions, which, by operation of law, will cause the zoning classification of the property to revert back to agricultural/residential. Consequently, the zoning conditions approved by the township completely negate the ostensible rezoning under every possible set of facts. The zoning ordinance does not purport to authorize drag racing on the property, and the conditions placed on the rezoning effectively preclude any land use other than those that were already permitted under the original zoning classification. The zoning amendment serves no purpose and advances no reasonable governmental interest. It is therefore invalid.

The trial court thus concluded that the conditional rezoning was contrary to the Township's zoning ordinances that did not include drag racing as a permitted use under C-2 zoning; should defendant-appellant fulfill the conditions of the agreement, it would exceed the scope of the permitted nonconforming use and thus ultimately cause the property to revert to its original residential zoning.[7]

Even though a zoning ordinance is presumed to be reasonable, a court will "apply greater scrutiny" in circumstances where a zoning amendment allows use of land that is inconsistent with the overall zoning plan. *Essexville*, 259 Mich App at 274. This is because zoning amendments are "more prone to arbitrariness," being "based on the particular land and circumstance at issue in the request," rather than the "overall plan of action" for development of the municipality's lands. *Essexville*, 259 Mich App 257 at 274-275. The challenger in these cases has the burden of overcoming the presumption of reasonableness of a zoning ordinance "by proving that there is no reasonable governmental interest being advanced by the zoning ordinance." *Kyser v Twp*, 486 Mich 514, 521; 786 NW2d 543 (2010).

In this case, defendant-appellant's conditional rezoning included rezoning the subject property from zoning classification R-1 to C-2, using the property for track rental and vehicle testing on Mondays through Thursdays, and for additional organized racing on Fridays through Sundays. The local ordinance states that a C-2 zoning district is a "general commercial district . . . designed to provide sites for more diversified business types which would often be incompatible with the pedestrian movement in a central business district. . . ." Mayfield Ordinance § 1101 lists principal uses in the C-2 zoning district to include all C-1 (local commercial district) uses, indoor

---

[7] MCL 125.3405(2) provides that "the local unit of government may establish a time period during which the conditions apply to the land," and that, "[e]xcept for an extension under subsection (4), if the conditions are not satisfied within the time specified under this subsection, the land shall revert to its former zoning classification."

commercial recreation, plant material nurseries, automotive service facilities, veterinary services and kennels, boarding houses, and other similar uses, and lists accessory uses customarily incidental to the principle permitted uses. Therefore, as the trial court determined, drag racing is not a principal permitted use in a C-2 district.

Defendant-appellant argues that the trial court should not be permitted to add a requirement to a conditional zoning agreement that the agreed use be allowed under the existing zoning. It is the Township ordinances, rather than the trial court, that impose limitations on the uses of property in a C-2 zoned area, however, obviously, if the agreed use were already permitted under the existing zoning ordinance, a conditional zoning agreement would not be required.

When the agreed rezoning anticipates a use excluded by the zoning district in question, it is fatal to the operation of the conditional zoning agreement. Thus, the conditional zoning agreement was void according to Mayfield Ordinance § 1101, and as the trial court held, "there is no reasonable governmental interest being advanced" by the agreement. Accordingly, we hold that plaintiffs met their burden in challenging the conditional zoning. See *Kyser*, 486 Mich at 521.

For these reasons, we conclude that the trial court did not err by determining that plaintiffs had successfully challenged defendants' conditional zoning agreement and awarding them declaratory relief.

Affirmed. Plaintiffs may tax costs.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney